**Winford Gerald CASWELL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 88–69.

United States Court of Appeals
Tenth Circuit.

Aug. 19, 1969.

J. Stephen Gammill, Albuquerque, N. M., for appellant.

John A. Babington, Asst. U. S. Atty., Albuquerque, N. M. (Ruth C. Streeter, Acting U. S. Atty. at the time the brief was filed, on the brief), for appellee.

Before LEWIS, Circuit Judge, FAHY, Senior Circuit Judge,[*] and SETH, Circuit Judge.

FAHY, Senior Circuit Judge.

In the United States District Court for the District of New Mexico appellant was convicted at a jury trial of stealing a 1965 Dodge automobile title certificate,[1] of a value exceeding $100.00. The certificate was in the custody of the First National Bank of Dona Ana County, Las Cruces, New Mexico, an institution organized under the laws of the United States, so that the offense was a violation of 18 U.S.C. § 2113(b).[2]

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

1. Described in the indictment as "a New Mexico automobile title, Number 1628506, to a 1965 Dodge."

2. (b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; * * *.

Appellant presents the question whether cross-examination of the principal Government witness, Harold E. Hill, an employee of the Bank, was erroneously curtailed. He urges that it was with respect to (1) the witness' possible bias against appellant and (2) the witness' credibility, as will be explained. To place these contentions in context we outline the relevant factual situation.

Appellant owed the Bank an installment note for the balance due on the Dodge, the title to which was held by the Bank. He became delinquent in the payments and also on a loan involving another automobile. The Bank repossessed one of the vehicles. Appellant went to the storage lot where the Bank had parked this car and took it to his home. Mr. Hill reported the car as stolen. He testified further that on August 15 he made copies of the title instruments and delivered them to the Bank's attorney for preparation of papers to recover both cars by a replevin proceeding. A day or two later appellant came to the Bank and talked with Mr. Hill, who testified that at this meeting the Bank's file of papers involving appellant was on his desk. He said he left his office for five or ten minutes, leaving appellant there alone. Further testimony was to the effect that a few days later appellant appeared before a notary public who took his acknowledgment on the Dodge title certificate that he was the holder of the lien therein described and that the lien was released and discharged; there was testimony further that appellant on the same day presented the Dodge title certificate with the lien thus released to a finance corporation and obtained a loan secured by a new lien on the car. Mr. Hill testified that he later discovered the certificate was missing from appellant's file.

Appellant's defense was that sometime before the events above described he had come into the possession of the certificate in a lawful manner; that is, his wife had been given the complete file for the purpose of obtaining license plates and he had kept some of the papers believing they were his own. These, he said, included the 1965 Dodge title certificate.

Appellant does not contend that the evidence was inadequate to support the verdict of guilty. He does contend, as has been indicated, that except for undue restriction upon the cross-examination of Mr. Hill the jury might not have been convinced of his guilt beyond a reasonable doubt.

As to the claimed restriction on the cross-examination of Mr. Hill for bias appellant urges, on the basis of the testimony, that Mr. Hill had been over-zealous with respect to appellant's involvement with the Bank, and indeed had been mistaken, particularly in blaming him for delinquency in payments attributable to another's bad check deposited and relied upon by appellant, and that to justify himself Mr. Hill was led to fabricate testimony that the Dodge title certificate was in the file August 15, two days before appellant's visit at the Bank when he was left alone with the file on Mr. Hill's desk.[3] The ruling of which appellant complains as curtailing his efforts to show bias appears in the excerpt from the transcript here set forth in the margin.[4]

18 U.S.C. § 2113(b). By 18 U.S.C. § 2113(f) the word "bank" in Section 2113(b) is defined to include any banking institution organized or operating under the laws of the United States.

3. There was evidence that the title paper, an exhibit, had been torn out of the file binder.

4. Q. ([Counsel for defendant] continuing): It's true, isn't it, that you had not gotten along very well with Mr. Caswell?
A. Mr. Caswell and I had had some disagreement in the past.
Q. As a matter of fact, you didn't think very—think much of him or his credibility with your bank, did you?
A. I didn't have—
[Counsel for Government]: Object to that, a personal opinion.
The Court: What this man thinks, what's the purpose of this counselor?

██ It was thus brought out on cross-examination that appellant and Mr. Hill had had disagreements; and it is clear also that Mr. Hill considered appellant among "people who don't want to pay." This seems to be all in substance that counsel in this cross-examination sought to elicit from Mr. Hill. This being so we find that the ruling complained of did not in fact cut off any evidence the cross-examination as conducted was designed to elicit.

The other incident involves the effort of appellant's counsel to discredit Mr. Hill's testimony that on August 15 the title certificate was in the file, supported by his claim he then made a copy of it to help the Bank's attorney prepare to replevin the car. Appellant's counsel sought to probe this matter as follows:

Q. Have you, in your experience at that bank, found it necessary to replevin vehicles before—

[Counsel for Government]: I will object to that, Your Honor. There's no relevance to this case.

The Court: Yes, objection sustained.

[Counsel for defendant]: Well, Your Honor, what I am trying to show is whether or not it would have been reasonable for him to have made a copy of the title certificate rather than just the security agreement.

The Court: Well, objection is sustained.

██ We have difficulty accepting the Government's position in this court that since other vehicles were not involved counsel's inquiry went beyond the scope of direct examination and, therefore, appellant should have made Mr. Hill his own witness if he desired to pursue this line of inquiry, rather than to explore it through cross-examination. Replevin and copying of papers in connection therewith had been discussed in the direct examination, and the question on cross was designed to probe what papers it was reasonable for Mr. Hill to have copied for replevin purposes. We think the cross-examination need not have been so confined as to preclude this course of inquiry. But it does not follow that appellant is entitled to a reversal of his conviction. Bearing as it did only upon the credibility of the witness, and not on a substantive factual issue, the error, if error it was, was not of a character to require reversal. The testimony as a whole furnished a fair basis for the jury to determine whether to believe Mr. Hill or appellant about whether the title certificate was in the file left on Mr. Hill's desk in appellant's presence, or had long been in appellant's lawful possession. Considering all that was before the jury the development of evidence as to what copying of papers Mr. Hill might have done in preparing for other replevin actions is so unlikely to have had a "substantial influence" upon the verdict that we are not warranted in awarding a new trial because the court closed off further inquiry about this particular matter. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557.

Affirmed.

---

[Counsel for defendant]: The purpose of this, Your Honor, is to show that these two gentlemen had an awful lot of difficulty, and that this is the man who undertook this action, not the bank, and I think it goes toward his credibility.
The Court: All right, I'll let you ask him. Now, would you repeat your question again?
Q. ([Counsel for defendant] continuing): I said, you didn't think much of him or his credibility with your bank?

A. I don't really have too many personal opinions about our customers. I am there to do a job and my job was that of handling delinquent accounts. I oftentimes have disagreements with people who don't want to pay.
Q. And that's what you thought of Mr. Caswell, he was a person who didn't want to pay his bills?
A. He was a man who was delinquent in his account.
The Court: That's going too far, counselor. I'll sustain the objection to that.